LEANDER CLARK, APPELLANT, v. CHARLES K. DAVIES, APPELLEE.

FILED DECEMBER 10, 1910.    No. 16,228.

1. **Brokers:** PLEADING: VARIANCE. A real estate broker suing and solely relying on a special contract for his commission cannot recover upon a *quantum meruit*.

2. ———: ———: ———. An owner, by a written contract, agreed to pay a real estate broker a commission of $840 if he should sell his 840-acre tract of land for $15 an acre. The broker failed to sell the land, but produced a customer to whom, after much negotiation, the owner himself succeeded in making a sale for about $11.30 an acre. The broker sued upon the contract, and sought

to recover the amount of his commission named therein, strictly according to its terms. *Held,* upon the facts above stated, that he was not entitled to recover in that form of action.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Frank E. Beeman* and *John N. Dryden,* for appellant.

*W. L. Hand, contra.*

BARNES, J.

Action by a real estate broker to recover his commission for services rendered his principal in the sale of real estate. At the close of the evidence the district court directed the jury to return a verdict for the defendant, which was done, and judgment rendered thereon, and the plaintiff has brought the case here by appeal.

The contract or memorandum agreement between the parties reads as follows: "Platte Valley Land & Cattle Company, Kearney, Neb., Jan. 24, 1906. I hereby agree to pay a commission of $840 to above company if they sell my 840 acres in Custer Co., Neb.; price to be $15 per acre, this being the ranch purchased by me of L. Clark. C. K. Davies, L. A. Deneson, Platte Valley Land & Cattle Company." This memorandum was accompanied by a plat designating the land in question. It was alleged in the petition that the plaintiff, at the time the contract was made, and when the services were performed, was doing business in the name and style of the Platte Valley Land & Cattle Company; that when the contract was signed one L. A. Deneson was part owner of the land described therein, but before it was sold he had transferred his interest to the defendant; that the plaintiff afterwards, and on or about the 5th day of September, 1906, in pursuance of the contract, procured a purchaser for the real estate described therein, to wit, one Fred Goodell; that Goodell, through his attorney in fact, one J. C. Goodell, purchased the real estate for the sum of $9,500, and that the defend-

ant, Charles **K.** Davies, conveyed said premises to said purchaser; that the defendant failed, neglected and refused to pay the amount due plaintiff for his services; that there was due on the contract the sum of $1,000, for which sum, with interest, the plaintiff prayed judgment.

The defendant's answer contained, first, an allegation of defect of parties; second, a statement that the petition did not state facts sufficient to constitute a cause of action; and, third, a general denial.

The evidence introduced by the plaintiff tends to sustain the allegations of his petition. It appears that both before and after the memorandum agreement was signed plaintiff advertised the land for sale in the Stockman's Journal, published at South Omaha, Nebraska; that he took the agent of the purchaser to view the premises, which were situated some 60 miles from Kearney; that the agent was satisfied with the land and the improvements thereon, but was unwilling to pay the full price asked, to wit, $15 an acre; that plaintiff kept in touch with the purchaser's agent, and with the defendant, and brought them together; that these efforts continued from a time preceding the date of the contract up to the date of purchase; that the defendant reduced the price in order to effect the sale, which was finally consummated for the sum of $9,500, or something over $11 an acre. The defendant testified in his own behalf, and admitted that he had made the written contract above quoted with the plaintiff for the sale of the land in question. He also testified that the plaintiff did not negotiate a sale of the premises for $15 an acre, but that he made the sale himself at the reduced price of $9,500.

With the pleadings and the testimony in the condition above described, the trial court directed the jury to return a verdict for the defendant, upon the theory that the plaintiff had agreed to sell the land in question at $15 an acre for a commission of $840, and, as no evidence was introduced to show that he had actually sold it, therefore he was not entitled to recover. It is contended by the plaintiff that, having found a purchaser, and by his efforts

in that behalf having brought the purchaser and the owner of the land together, the owner by reducing the price, and thereby effecting the sale, could not deprive him of his right to recover the compensation mentioned in the contract. On the other hand, the defendant contends that the memorandum agreement is not a sufficient contract in law to entitle the plaintiff to recover; that it was not properly signed, and in fact several technical objections are urged as to the sufficiency of the memorandum agreement. We think there is no merit in these contentions. The contract or memorandum agreement, both in form and substance, complies substantially with the provisions of section 74, ch. 73, Comp. St. 1909, and when coupled with the description and the averments of the petition, if its terms were complied with, would sustain a judgment for the plaintiff.

It is further contended by the defendant that the contract in question is special; that by its terms the plaintiff was required, and agreed, to sell the defendant's land for $15 an acre, and, in case the plaintiff made such sale, then he was to have a commission of $840, or $1 an acre for the entire tract of 840 acres; otherwise, he was to receive nothing whatever for his services; that the plaintiff having failed to make the sale himself for that price, and the defendant having consummated the sale at a less price, therefore the plaintiff can recover nothing for his services.

Whenever a sale of real estate is effected through the efforts of the broker, or through information derived from him, so that he may be said to be the procuring cause of it, his services are regarded as highly meritorious and beneficial, and the law leans to that construction which will best secure the payment of his commission. It seems that we are committed to this rule, and if the plaintiff had brought this action to recover the value of his services, or upon a *quantum meruit,* we think that he would have been entitled to substantial relief. But this is an action on the contract in which he seeks to recover the amount of compensation provided thereby. There is nothing in the

pleadings or the proof which will authorize a recovery on any other theory. It is clearly shown that the plaintiff not only failed to sell the defendant's land, but failed to produce a purchaser who was ready and willing to purchase it and pay the price named in the contract; that after negotiations covering a period of more than eight months defendant, in order to make the sale, was compelled to reduce his price to about $11.30 an acre. This was such a substantial reduction as to exclude any assumption that the sale was made by the defendant at a less price in order to deprive the plaintiff of his commission.

This is simply a case where the broker was unable to make the sale, and has failed to comply with the terms of his agreement. Therefore he is not entitled to recover the compensation named therein. *Beatty v. Russell,* 41 Neb. 321; *Stewart v. Smith,* 50 Neb. 631; *Barber v. Hildebrand,* 42 Neb. 400; *Langhorst v. Coon,* 53 Neb. 765. In *Dorrington v. Powell,* 52 Neb. 440, it was held that a real estate broker suing and relying solely on a special contract cannot recover on a *quantum meruit.* That decision seems to require an affirmance of the judgment in the instant case. It is with reluctance we have reached this conclusion, for as a matter of equity plaintiff ought to be paid for the services which he rendered to the defendant, but to reverse the judgment would require us to violate precedent and establish a rule unsupported by authority.

The judgment of the district court is therefore

AFFIRMED.

ROSE, J., not sitting.